UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
KERVIN JEANTY,

                                Plaintiff,

                  - against -

NEWBURGH BEACON BUS CORP., EDWARD
GALLAGHER, MARC MILLER, DAN SPANGLER,
KIM MISHK, JOHN PROCAK, and ALFREDO SOLIS,

                                Defendants.
--------------------------------------------------------------------x

**OPINION & ORDER**

17-CV-9175 (CS)

Appearances:

Kervin Jeanty
Newburgh, New York
*Plaintiff Pro Se*

Mark N. Reinharz
Bond, Schoeneck & King, PLLC
Garden City, New York
*Counsel for Defendants*

Seibel, J.

       Before the Court is the Motion to Dismiss of Defendants Newburgh Beacon Bus

Corporation ("NBBC"), Edward Gallagher, Marc Miller, and Jon Procak.  (Doc. 25.)  For the

following reasons, the motion is GRANTED.

## I.      **BACKGROUND**

       The facts below are taken from the Amended Complaint, (Doc. 16 ("AC")), and the other

documents I may consider on this motion as set forth in Part II.B.[1]  For purposes of this Motion,

the Court accepts those facts (although not Plaintiff's mere conclusions) as true.

---

[1] Citations to the Amended Complaint refer to the Court's electronic case filing system page number stamped at the top of each page of the Amended Complaint.

The facts of the Amended Complaint are out of sequence and difficult to follow. Plaintiff, proceeding *pro se*, is a driver with a commercial drivers license ("CDL"). (AC at 7.) He has about fourteen years of commercial driving experience and about ten years of CDL bus and truck experience. (*Id.*) The Defendants in this case are: (1) NBBC, which, for a time, employed Plaintiff as a driver, (*id.* at 2, 7); (2) Edward Gallagher, NBBC's Chief Executive Officer, (*id.* at 2); (3) Marc Miller, NBBC's Director of Operations, (*id.* at 3); (4) Dan Spangler, NBBC's Director of Operations, (*id.* at 4); (5) Alfredo Solis, a Coach Dispatch Supervisor at NBBC, (*id.*); (6) Jon Procak, a Dispatch Supervisor at NBBC, (*id.*); and (7) Kim Mishk, a Dispatch Supervisor at NBBC, (*id.*). NBBC hired Plaintiff as a truck driver in 2009. (*Id.* at 8.) While working at NBBC, Plaintiff "complained a lot about the pay stubs" and his "checks were short on a regular basis." (*Id.*) In or around February 2010, Plaintiff alleges he was constructively discharged. (*Id.*)

In or about June 2010, Plaintiff became employed by Mid State Bus Service ("MBS"), (Doc. 27 ("Reinharz Aff.") Ex. 1 at 5), but alleged that "[s]oon after the working environment became unpleasant and [he] was no longer working there, by Jan/Feb 2012," (*id.* at 6.) In early 2012, Plaintiff went back to NBBC seeking employment but was told by non-Defendant Bob Calli that he would not be considered for employment because of an "employment hearing" in mid-2010. (*Id.* at 5.)

Sometime between February 2012 and February 2015, NBBC purchased MBS. (AC at 7.) Plaintiff began working at NBBC for the second time in or around October 2016, with a starting salary of $17.00 per hour. (*Id.*) Plaintiff complained that his starting pay was not commensurate with his work experience and was allegedly told that "it would take a few days[] for [his] file to be pulled[] in order to be paid[] according to years of experience, and that

everything would be [r]etro." (*Id.*)  Plaintiff alleges he never received his proper pay for the time he worked during this period.  (*Id.*)

In or around October and November 2016, Plaintiff inquired about working extra shifts driving transit or charter buses.  (*See id.*)  He was told to speak with Miller regarding his inquiry. (*Id.*)  Plaintiff alleges Miller canceled transit bus training classes or told Plaintiff the classes were full and that he was kept from working extra shifts.  (*See id.*)  Plaintiff also alleges that when he asked Miller about working overtime, Miller stated that "there was no overtime."  (*Id.*)  On November 11, 2016,[2] Spangler told Plaintiff "[s]hit in bed overnight" and instructed Plaintiff to fill up a bus that did not need to be filled because it was not Plaintiff's bus.  (*Id.*)

While working at NBBC from October 2016 to February 2017, Plaintiff noticed his paychecks were short and began making copies of his timecards and charter requests.  (*Id.*) When Plaintiff asked about his paychecks he "was given the run around regarding [his] paycheck shortages[] from John Procak and Kim Mishk." (*Id.*)  In or around November and December 2016, Procak "assigned [him] buses that did not start, and ignored [him] when [he] gave a radio check."  (*Id.*)  Around the same time, Procak and Mishk asked him to "punch out early." (*Id.*)

In December 2016, Plaintiff again inquired about transit training classes and was directed to speak with Solis.  (*Id.*)  Solis allegedly told Plaintiff "[he] would be able to start transit training class next week" after Solis "ma[d]e [his] 'Federal File.'"  (*Id.*)  When Plaintiff again inquired about "charters/extra work/pick slips" to Solis, Plaintiff alleges Solis "began tapping, or flicking and or slapping his hands on [Plaintiff] as [they] spoke about charters."  (*Id.*)  Plaintiff alleges he never received extra work.  (*Id.*)  Plaintiff also claims he was "denied training, extra

---

[2] Plaintiff's Amended Complaint alleges that the incident with Spangler occurred on November 11, 2017.  (AC at 7.) But because the Plaintiff also alleges he was constructively discharged from NBBC in February 2017, (*id.* at 8), the Court assumes that the incident occurred on November 11, 2016.

hours, overtime and given poor work assignments" and was "retaliated against for complaining about payroll issues and overtime." (*Id.* at 8.)

On January 25, 2017, Plaintiff filed a charge of discrimination with the New York State Division of Human Rights ("NYSDHR"). (Reinharz Aff. Ex. 1 at 2.) When prompted to check boxes describing the possible bases of discrimination, Plaintiff selected two boxes only: (1) the box labeled "Disability," under which he specified "TBI, Anxiety," and (2) the box labeled "Domestic Violence Victim Status," under which he specified "Almost killed by in-laws 2x." (*Id.* at 3.) The boxes labeled "Race/Color or Ethnicity" and "Sex" were not selected. (*Id.*) Plaintiff's NYSDHR complaint describes "a traumatic brain injury" he suffered in 2013 from an attack by several in-laws, which apparently formed the basis for both his disability and victim of domestic violence claims. (*Id.* at 8.)

On or about February 20, 2017, Plaintiff arrived at work, but was told he was unable to drive and had to contact Omni Medical regarding his medical card. (AC at 8.) Plaintiff claims that "nothing was given to [him], nor did [he] receive a letter [in] the mail" regarding his medical card or inability to drive for NBBC. (*See id.*) Correspondence between NBBC and the medical examiner responsible for certifying its bus drivers under the United States Department of Transportation ("USDOT" or "DOT") regulations reveals that by letter dated February 16, 2017, NBBC informed the medical examiner of Plaintiff's statement regarding his traumatic brain injury, (Doc. 28 ("P's Opp.") at 9[3]), and that the medical examiner on February 17, 2017 revoked Plaintiff's medical certification and required information regarding the injury and a new examination, (*id.* at 12).

---

[3] Citations to Plaintiff's opposition memorandum refer to the Court's electronic case filing system page number stamped at the top of each page of the Amended Complaint.

On July 5, 2017, the NYSDHR dismissed Plaintiff's charge, explaining that the record contained insufficient "evidence that [NBBC's] conduct was motivated by unlawful discriminatory animus against individuals who are disabled or who are victims of domestic violence." (Reinharz Aff. Ex. 2 at 2.) Among other things, the determination noted that NBBC asserted that Plaintiff was suspended in February 2017 due to his "failure to disclose significant medical history in his pre-employment physical for the USDOT certification needed for his employment as a bus driver," (*id.* at 1), and that Plaintiff had not denied "that [he] failed to disclose his 2013 brain injury during his October 24, 2016 physical and on his application of the same date," (*id.* at 1; *see id.* at 2). On August 23, 2017, the Equal Employment Opportunity ("EEOC") adopted the findings of the NYSDHR and issued Plaintiff a right to sue letter. (*Id.* Ex. 3.)

On November 21, 2017, Plaintiff filed his initial complaint in this Court. (Doc. 2.) On January 8, 2018, Defendants submitted a letter seeking a pre-motion conference regarding a motion to dismiss. (Doc. 9.) On February 21, 2018, the Court held a pre-motion conference, at which the Court granted Plaintiff leave to amend his complaint. (Minute Entry dated Feb. 21, 2018.) On April 3, 2018, Plaintiff filed his Amended Complaint, alleging federal claims of race, color, and sex discrimination and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the New York State Human Rights Law ("NYSHRL"), and claims for retaliation under § 215(a)(3) of the Fair Labor Standards Act ("FLSA") and §§ 215, 740 of New York Labor Law ("NYLL"). (Doc. 16 at 3, 5.) On May 3, 2018, Defendants filed this Motion to Dismiss, (Doc. 25), their memorandum of law in support of their motion, (Doc. 26), and the affidavit of their attorney, (Doc. 27). Plaintiff filed his opposition to Defendants'

Motion to Dismiss on June 3, 2018, (Doc. 28), and Defendants filed their reply memorandum in support of their motion on June 18, 2018, (Doc. 29 ("Ds' Reply")).[4]

## II.   DISCUSSION

### A.   Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded

---

[4] Plaintiff seems to have abandoned all claims except his retaliation claims under Title VII, FLSA, and NYLL because his opposition memorandum, (Doc. 28), does not mention the other claims or attach relevant documents. "At the motion to dismiss stage, where review is limited to the pleadings, a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim." *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-CV-442, 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014); *see, e.g., Silverman v. Miranda*, 116 F. Supp. 3d 289, 303 (S.D.N.Y. 2015); *Bonilla v. Smithfield Assocs. LLC*, No. 09-CV-1549, 2009 WL 4457304, at *4 (S.D.N.Y. Dec. 4, 2009).  In an abundance of caution, I will assume Plaintiff wishes to pursue all claims alleged in his Amended Complaint.

factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679.

Deciding whether a complaint states a plausible claim for relief is "a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense." *Id.*

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to

relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)). "[W]hile a discrimination

complaint need not allege facts establishing each element of a *prima facie* case of discrimination

to survive a motion to dismiss, it must at a minimum assert nonconclusory factual matter

sufficient to nudge its claims across the line from conceivable to plausible to proceed." *EEOC v.*

*Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (alterations, citations, and internal

quotation marks omitted).

Complaints made by *pro se* plaintiffs are to be examined with "special solicitude,"

interpreted "to raise the strongest arguments that they suggest," *Shibeshi v. City of N.Y.*, 475 F.

App'x 807, 808 (2d Cir. 2012) (summary order) (emphasis and internal quotation marks

omitted)[5], and "held to less stringent standards than formal pleadings drafted by lawyers,"

*Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks omitted). Nevertheless,

"threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice," and district courts "cannot invent factual allegations" that the

plaintiff has not pleaded. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal

quotation marks omitted).

---

[5] The Court will send to Plaintiff copies of all unpublished decisions cited in this Opinion and Order.

## B.  Documents Properly Considered

When deciding a motion to dismiss, a court is entitled to consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint . . . , and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (internal quotation marks omitted).  Furthermore, "in adjudicating a Rule 12(b)(6) motion, courts may take judicial notice of documents in the public record, which include[] records and reports of administrative bodies, i.e., the NYSDHR," *Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 433 (E.D.N.Y. 2015) (alterations omitted), but only "to establish the fact of such litigation and its outcome; not for the truth of the matters asserted therein," *Colvin v. State Univ. Coll. at Farmingdale*, No. 13-CV-3595, 2014 WL 2863224, at *16 (E.D.N.Y. June 19, 2014).

Annexed to the affidavit of Defendants' counsel, (Reinharz Aff.), are the following documents:  (1) the charge of discrimination filed by the Plaintiff with the NYSDHR and EEOC on January 25, 2017, (*id.* Ex. 1); (2) the Determination and Order After Investigation issued by the NYSDHR on July 5, 2017, (*id.* Ex. 2); (3) the Right to Sue Letter issued by the EEOC on August 23, 2017, (*id.* Ex. 3); (4) Plaintiff's Initial Complaint filed in this matter, (*id.* Ex. 4); (5) the January 8, 2018 letter from Defendants seeking a pre-motion conference concerning their initial complaint, (*id.* Ex. 5); (6) a copy of the transcript of the pre-motion conference the Court held on February 21, 2018, (*id.* Ex. 6); and (7) Plaintiff's Amended Complaint, (*id.* Ex. 7 ("AC")).  The Court will consider these documents.  Exhibits 1-3 are records and reports of administrative bodies and can be considered on a motion to dismiss.  But I consider them only

for the fact that such litigation occurred, not for the truth of the matters asserted therein. I also

consider Exhibits 4-7 because they are documents from the record in this case.

Plaintiff attached four exhibits to his opposition, (Doc. 28), which he characterizes on

page 4 of his opposition as: (1) "overtime not paid, pay stub, timecard," (*id.* Ex. A); (2)

"constructive discharge, 2017 unemployment case, exam bills," (*id.* Ex. B); (3) "sample of

covered routes/substitute driver, drivers/trainers wanted, notice report," (*id.* Ex. C); and (4) "W-2

(2016 & 2017) pay stubs, pay roll, New York State records," (*id.* Ex. D). Ordinarily, a party

cannot supplement a complaint through papers in opposition to a motion to dismiss. *See, e.g.*,

*Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 122-23 (S.D.N.Y.

2010). But a district court has the discretion to consider supplemental statements and documents

outside of the complaint when they are submitted by a *pro se* litigant. *Milano v. Astrue*, No. 05-

CV-6527, 2007 WL 2668511, at *2 (S.D.N.Y. Sept. 7, 2007) ("[W]here a *pro se* plaintiff has

submitted other papers to the Court, . . . the Court may consider statements in such papers to

supplement or clarify the plaintiff's pleaded allegations.") (collecting cases). Therefore, I will

consider all of the documents attached to Plaintiff's opposition as well.

## C. <u>Statute of Limitations</u>

To file a federal complaint alleging violations of Title VII, a potential plaintiff must first

present the claims forming the basis of such a suit in a complaint to the EEOC or the equivalent

state agency. *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006). "In states such as

New York that have an agency with the authority to address charges of discriminatory

employment practices, the statute of limitations for filing a charge of discrimination with the

EEOC is 300 days." *Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d

Cir. 1993), *superseded by statute on other grounds as recognized in Hawkins v. 1115 Legal Serv.*

*Care*, 163 F.3d 684 (2d Cir. 1998). This limitations period begins to run from the date that each discrete act occurs, so that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (examples of "discrete discriminatory acts" include "termination, failure to promote, denial of transfer, or refusal to hire").

There is a narrow exception to this procedural requirement when an otherwise time-barred claim is part of a "continuing violation." *See Gross v. Nat'l Broad. Co.*, 232 F. Supp. 2d 58, 68 (S.D.N.Y. 2002). Such "a continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Quinn v. Green Tree Credit Corp*., 159 F.3d 759, 766 (2d Cir. 1998) (internal quotation marks omitted), *abrogated in part on other grounds byMorgan*, 536 U.S. 101. Plaintiff does not produce any facts to show Defendants' alleged actions of discrimination established continuing violations. Nor does he allege a discriminatory hostile work environment.[6] Accordingly, all discrimination claims arising more than 300 days before Plaintiff filed his NYSDHR complaint on January 25, 2017 – that is, before March 31, 2016 – are time-barred.

### D. Exhaustion of Administrative Remedies

Defendants argue that Plaintiff has failed to exhaust his administrative remedies because Plaintiff's NYSDHR complaint did not allege discrimination on the basis of race, color, or sex, (Reinharz Aff. Ex. 1 at 3), which is the type of discrimination he alleges in his Amended

---

[6] Where a hostile work environment is pleaded, acts outside the 300-day period may be considered as long as an act contributing to that environment takes place within that period. *See, e.g.*, *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010).

Complaint, (AC at 3). A court has jurisdiction to hear only claims that are contained in an EEOC charge or are "reasonably related" to the claims in Plaintiff's administrative complaint. *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998). "This exhaustion requirement is an essential element of Title VII's statutory scheme," *Butts*, 990 F.2d at 1401, and is meant "'to give the administrative agency the opportunity to investigate, mediate, and take remedial action,'" *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 614 (2d Cir. 1999) (quoting *Stewart v. U.S. INS*, 762 F.2d 193, 198 (2d Cir. 1985)). "There are three types of reasonably related claims: (1) claims that fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination; (2) claims that allege retaliation arising from the filing of an EEOC charge; and (3) claims that allege further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Caddick v. Pers. Co. I LLC*, No. 16-CV-7326, 2018 WL 3222520, at *6 (S.D.N.Y. June 29, 2018) (internal quotation marks omitted).

Plaintiff's NYSDHR complaint contained charges of discrimination based only on his disability and status as a domestic violence victim. (Reinharz Aff. Ex. 1 at 3.) In his Amended Complaint, Plaintiff only alleges discrimination under Title VII on the basis of race, color, and sex. (AC at 3.) Thus, these discrimination claims may proceed only if they are reasonably related to the disability and domestic violence victim charges filed with the NYSDHR. In determining whether "the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made," the Court's focus is on the factual content of the administrative complaint, and whether the conduct complained of gave the agency "adequate notice to investigate discrimination on both bases." *Williams*, 458 F.3d at 70 (internal quotation marks omitted).

Plaintiff's administrative complaint could not have given the NYSDHR adequate notice to investigate discrimination based on race, color, or sex. The factual allegations surrounding Plaintiff employment history contain no mention of Plaintiff's race, color, or sex; indeed, the Plaintiff's race, color, and sex are not disclosed anywhere in the administrative complaint. (*See* Reinharz Aff. Ex. 1.) The closest Plaintiff comes to mentioning his race, color, or sex in his administrative complaint is when he alleges that "Elizabeth Murphy [not a Defendant here] made several improper comments regarding race/discriminatory, sexually har[]assed, and compared my pay out loud to other employees, who had been there for many years, because I was being paid more than them." (*Id.* at 5-6.) That conclusory, vague, and passing allegation does not suffice for exhaustion. *See Chukwueze v. N.Y.C. Emps.' Ret. Sys.*, 891 F. Supp. 2d 443, 452 (S.D.N.Y. 2012) (indirect reference to natural origin in EEOC charge alleging religious discrimination insufficient to meet "reasonably related" test where origin box not checked); *see also Petyan v. N.Y.C. Law Dep't*, No. 14-CV-1434, 2015 WL 1855961, at *6 (S.D.N.Y. Apr. 23, 2015) (passing reference in NYSDHR complaint insufficient to exhaust). The "reasonably related" doctrine cannot "be stretched to bridge the gap between the allegations asserted in the plaintiff's [administrative] complaint and the claims he raises in this civil action." *Mathirampuzha v. Potter*, 548 F.3d 70, 76 (2d Cir. 2008). As such, Plaintiff's Title VII claim for discrimination must be dismissed for failure to exhaust available administrative remedies.

A claim alleging retaliation for filing a discrimination charge, however, is regarded as "reasonably related" to the underlying charge, and a separate administrative complaint for that claim is not required. *Legnani v. Alitalia Linee Aeree Italiane, S.P.A*, 274 F.3d 683, 686 (2d Cir. 2001). Plaintiff's Title VII retaliation claim is thus exhausted and properly before the Court.

E.      **Federal Claims**

1.      Discrimination Claim Under Title VII

Even if Plaintiff's discrimination claims could go forward, they would be dismissed for failure to state a claim upon which relief can be granted.  "To defeat a motion to dismiss . . . in a Title VII discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (alteration omitted).  "The ultimate issue in an employment discrimination case is whether the plaintiff has met her burden of proving that the adverse employment decision was motivated at least in part by an impermissible reason, *i.e.*, a discriminatory reason."  *Stratton v. Dep't for the Aging for City of N.Y.*, 132 F.3d 869, 878 (2d Cir. 1997) (internal quotation marks omitted).  "A plaintiff can meet that burden through direct evidence of intent to discriminate or by indirectly showing circumstances giving rise to an inference of discrimination."  *Vega*, 801 F.3d at 87 (citations omitted).

An adverse employment action is "a materially adverse change in the terms and conditions of employment.  To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities."  *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (citation and internal quotation marks omitted).  Examples of a change in working conditions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation."  *Id.* (alteration omitted).  Between Plaintiff's allegations that his

paychecks were short and that he was suspended in February 2017, he has sufficiently pleaded an adverse employment action.[7]

But many of the actions Plaintiff alleges he endured are not adequately pleaded. For example, although Plaintiff alleges that he was constructively discharged in February 2017 – which would amount to an adverse employment action, *see Madray v. Long Island Univ.*, 789 F. Supp. 2d 403, 409 (E.D.N.Y. 2011) – "a constructive discharge occurs only when the plaintiff's employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily," *Bailey v. N.Y.C. Bd. of Educ.*, 536 F. Supp. 2d 259, 266 (E.D.N.Y. 2007) (internal quotation marks and alteration omitted) (collecting cases). Plaintiff's complaint, though replete with minor inconveniences such as unpleasant interactions with co-workers, is devoid of any allegations of an "intolerable" work atmosphere. Although Plaintiff has sufficiently pleaded an adverse employment action, it was not because of a constructive discharge.

That Plaintiff was denied training, overtime, and given undesirable work assignments, such as filling up a bus that did not need to be filled, also fall short of an adverse employment action. In certain circumstances, all three of these actions can be considered adverse employment actions, *see Carpenter v. City of Mount Vernon*, 198 F. Supp. 3d 272, 279-80 (S.D.N.Y. 2016) (denial of necessary training sufficient to allege adverse employment action); *Bowen-Hooks v. City of N.Y.*, 13 F. Supp. 3d 179, 217-18 (E.D.N.Y. 2014) (collecting cases) (denial of overtime given to others sufficient to allege adverse employment action); *Feingold v. New York*, 366 F.3d 138, 152-53 (2d Cir. 2004) (disproportionately heavy workload can be adverse employment action), but only if the plaintiff sufficiently alleges that he was materially

---

[7] As noted at page 18 below, however, it is dubious that his "suspension" amounts to an adverse action on the facts here.

harmed by the action, *see Carpenter*, 198 F. Supp. 3d at 279-80 (collecting cases) (absent material harm, such as failure to promote or loss of career advancement opportunities, denial of training insufficient to allege adverse employment action)); *Cruz v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 13-CV-1335, 2014 WL 2547541, at *5 (S.D.N.Y. June 4, 2014) (same); *Henry v. N.Y.C. Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 405-06 (S.D.N.Y. 2014) (same regarding both undesirable assignments and denial of overtime where no loss of compensation or other material detriment to employee's working conditions). For example, Plaintiff has not alleged that any of these actions led to a failure to promote or a loss of career advancement opportunities, or that his earnings were reduced, or that overtime was allocated unfairly. *See Carpenter*, 198 F. Supp. 3d at 279-80 (material harm shown where denial affects compensation or opportunities for career growth). Without any indication that Plaintiff was materially harmed, none of these actions qualify as an adverse employment action under Title VII.

Even though Plaintiff sufficiently pleaded an adverse employment action in the form of short paychecks and suspension, he has not offered the Court any basis to infer that any adverse employment action was caused by discrimination on the basis of Plaintiff's race, color, or sex. Plaintiff can raise an inference of discrimination "by showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)). "At the pleading stage, allegations that the plaintiff and comparators worked in the same group and were accountable to the same supervisors, but were subjected to disparate treatment may be sufficient to raise an inference of discrimination." *Pothen v. Stony Brook Univ.*, 211 F. Supp. 3d 486, 495 (E.D.N.Y. 2016). While a plaintiff "need only give plausible support to a minimal inference of

discriminatory motivation," *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015), "a Title VII plaintiff must still identify at least one comparator to support a minimal inference of discrimination; otherwise the motion to dismiss stage would be too easy to bypass," *Goodine v. Suffolk Cty. Water Auth.*, No. 14-CV-4514, 2017 WL 1232504, at *4 (E.D.N.Y. Mar. 31, 2017). Identification of a "generic class of [similarly situated] . . . employees" that allegedly received better treatment is "insufficient even at the pleadings stage." *Id.*; *see Yan v. Ziba Mode Inc.*, No. 15-CV-47, 2016 WL 1276456, at *5 (S.D.N.Y. Mar. 29, 2016) (no inference of discrimination where plaintiff "fail[ed] to plead any facts regarding how the[] employees' identities, experience levels, and conduct compared to Plaintiff's"); *T.P. ex rel. Patterson v. Elmsford Union Free Sch. Dist.*, No. 11-CV-5133, 2012 WL 860367, at *6 (S.D.N.Y. Feb. 27, 2012) ("[T]o withstand a motion to dismiss, a plaintiff must allege specific examples of others similarly situated who were treated more favorably.").

Plaintiff has not made even a conclusory allegation, let alone provided sufficient facts, to suggest that comparators were better treated. There is nothing in the Amended Complaint to suggest that any adverse action that was taken against Plaintiff was motivated by his race, color, or sex. He makes no allegations of discriminatory comments or otherwise provides facts suggesting bias on the part of any Defendant. Nor does he describe comparators outside his protected classes who were treated better. "Such allegations are necessary to render plausible the inference that Plaintiff's [protected status], rather than any number of other considerations, played a role" in Plaintiff's constructive discharge. *Mesias v. Cravath, Swaine & Moore LLP*, 106 F. Supp. 3d 431, 437 (S.D.N.Y. 2015) (requiring information regarding plaintiff's colleagues' departments, job responsibilities, and supervisors). Without such facts, and without any other evidence of discriminatory intent (such as insensitive remarks), Plaintiff has not raised

even a minimal inference that the employer was motivated by discriminatory intent based on race, color, or sex.[8]

Plaintiff's allegation "is a variation on a common (and patently defective) pleading technique in cases brought under federal and local antidiscrimination statutes: 'I am (fill in the protected class of which the plaintiff is a member); something bad happened to me at work; therefore the bad thing happened because I am (fill in the protected class).'" *Ochei v. Mary Manning Walsh Nursing Home Co.*, No. 10-CV-2548, 2011 WL 744738, at *3 (S.D.N.Y. Mar. 1, 2011).  But this is a false syllogism that does not support an inference of discrimination.  *See, e.g.*, *Lizardo v. Denny's Inc.*, 270 F.3d 94, 104 (2d Cir. 2001) ("Plaintiffs have done little more than cite to their mistreatment and ask the court to conclude that it must have been related to their race.  This is not sufficient.").  Even a *pro se* complaint is subject to dismissal where a pleading does not "manifest[] any form of racial animus, discriminatory words, prior incidents or other indications that . . . race played a role in [the employer's] decision." *Perry v. Sony Music*, 462 F. Supp. 2d 518, 520 (S.D.N.Y. 2006).  Here, there are no facts rendering it plausible that NBBC took any adverse action based on Plaintiff's membership in a protected class.  Accordingly, Plaintiff's Title VII discrimination claim would be dismissed for failure to state a claim even if it were exhausted.[9]

---

[8] The same reasoning would apply if the Court were to assume that Plaintiff meant to advance a claim for a hostile work environment based on race, color or sex.  There are simply no facts plausibly suggesting that anything that happened to Plaintiff at work was based on his membership in those protected classes.  Further, the slights Plaintiff experienced are not sufficiently severe or pervasive to amount to a plausible hostile work environment.  *See, e.g.*, *Guerrero v. Lowe's Home Ctrs, Inc.*, 254 F. App'x 865, 867 (2d Cir. 2007) (summary order).

If the Court were to assume that Plaintiff meant to allege that he was discriminated against based on disability, such a claim would not, for the same reasons, be plausible as it relates to any event other than his suspension.  To the extent such a claim would relate to Plaintiff's suspension, it is not plausible for the reasons discussed below in connection with Plaintiff's retaliation claim:  it is obvious that the suspension arose from the legitimate need for medical information regarding Plaintiff's newly disclosed head injury, not from animus toward people with such injuries.

[9] Further, it is well settled that there is no individual liability under Title VII.  *See Wrighten v. Glowski*, 232 F.3d

2.      Remaining Claims Under Title VII and FLSA

a.      *Title VII Retaliation*

Title VII prohibits employers from discriminating against an employee who "has opposed

any practice made an unlawful employment practice . . . or because he has made a charge,

testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42

U.S.C. § 2000e-3(a).  To plausibly allege a Title VII retaliation claim, a plaintiff must plead facts

to show that:  "(1) he was engaged in an activity protected under Title VII; (2) defendants were

aware of his participation in the protected activity; (3) defendants took adverse action against

him; and (4) a causal connection existed between the protected activity and the adverse action."

*Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 349 (S.D.N.Y. 2009).

Plaintiff's Title VII retaliation case is not sufficiently pleaded.  First, it is not clear that

there was any adverse action taken against him.  In the context of a Title VII retaliation claim, an

adverse employment action is a "materially adverse" action that "could well dissuade a

reasonable worker from making or supporting a charge of discrimination."  *Burlington N. &*

*Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).  By Plaintiff's own account, following his

EEOC charge, he was only told that he needed to contact Omni Medical and that he was not able

to drive in the interim.  (AC at 8.)  Plaintiff never disputes that he was unqualified under USDOT

regulations to drive during the period he was suspended.  All other conduct in Plaintiff's

Amended Complaint that could be conceivably interpreted as an adverse action is either time-

barred or does not rise to the level of an adverse action under Title VII.

---

119, 120 (2d Cir. 2000) (*per curiam*); *Garibaldi v. Anixter, Inc*., 407 F. Supp. 2d 449, 451 (W.D.N.Y.2006).
Therefore, the Title VII claims against the individual Defendants would be dismissed for this additional reason.

But even assuming Plaintiff established an adverse action in February 2017, Plaintiff's Title VII retaliation must be dismissed for failure to plausibly allege a causal connection between the Plaintiff's protected activity and the adverse action taken by NBBC. For an adverse retaliatory action to be caused by plaintiff's protected activity, "the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action," and "[i]t is not enough that retaliation was a 'substantial' or 'motivating' factor in the employer's decision." *Vega*, 801 F.3d at 90-91 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)). A plaintiff need not plead that retaliation was the only cause of the employer's action, "but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Id.* at 91 (internal quotation marks omitted).

A plaintiff may establish the causal connection indirectly by showing that the protected activity was closely followed by adverse action, or directly by showing evidence of retaliatory animus, *see Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993), even after *Nassar*, which established the but-for standard, *see Vega*, 801 F.3d at 90. "[A] close temporal relationship between a plaintiff's participation in protected activity and an employer's adverse actions can be sufficient to establish causation," *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002), and the temporal proximity between Plaintiff's filing of the NYSDHR complaint on January 25, 2017 and his suspension on February 20, 2017 would ordinarily be sufficient, *see McManamon v. Shinseki*, No. 11-CV-7610, 2013 WL 3466863, at *12 (S.D.N.Y. July 10, 2013) (collecting cases). But "[a]n intervening event between the protected activity and the adverse employment action may defeat the inference of causation where temporal proximity might otherwise suffice to raise the inference." *Nolley v. Swiss Reinsurance Am. Corp.*, 857 F. Supp.

2d 441, 461 (S.D.N.Y. 2012) (collecting cases), *aff'd*, 523 F. App'x 53 (2d Cir. 2013) (summary order).

There was an intervening event in this case that severed the temporal inference between Plaintiff's protected activity (filing his administrative complaint) and the adverse action (his February 2017 suspension).  Plaintiff's own account and the documents he attached to his opposition memorandum show that in his NYSDHR complaint he disclosed a previously unknown head injury.  (P's Opp. at 9; *see* Reinharz Aff. Ex. 1 at 8.)  His employer advised the DOT medical examiner of that fact and the examiner suspended him.  (P's Opp. at 9, 12.)  On these facts it is obvious that the suspension would have occurred in the absence of a retaliatory motive.  The transportation industry is tightly regulated and rigorous standards are imposed on motor vehicle carriers.  *See* 49 U.S.C. § 101(a) ("The national objectives of general welfare, economic growth and stability, and security of the United States require the development of transportation policies and programs that contribute to providing fast, safe, efficient, and convenient transportation . . . .").  Bus drivers must be certified fit by a DOT medical examiner, 49 C.F.R. § 391.41, and they must disclose all relevant information to the examiner, *see id.* § 390.35.  The employer is required to ensure drivers' obligations are observed.  *Id.* § 390.11 ("Whenever . . . a duty is prescribed for a driver or a prohibition is imposed upon the driver, it shall be the duty of the motor carrier to require observance of such duty or prohibition.").  Had Plaintiff's employer not informed the medical authority about the head injury – which Plaintiff does not allege to have previously disclosed – it could have been liable for any harm arising from its employment of an unverified and potentially unfit driver.  In these circumstances it is simply not plausible that resentment toward Plaintiff for making the NYSDHR complaint, rather than legitimate concern about the omission of a potentially significant medical issue, prompted

NBBC's report to the medical examiner and Plaintiff's subsequent suspension. While it is conceivable that NBBC told the doctor about the head injury with the intent to retaliate against Plaintiff for filing his administrative complaint, the facts Plaintiff presents here are insufficient to nudge his allegation "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Plaintiff's Title VII retaliation claim thus cannot survive.

        b.     *FLSA Substantive and Retaliation Claims*

      Plaintiff's FLSA allegations are anything but clear. On the one hand, Plaintiff alleges in his Amended Complaint that NBBC denied overtime pay and that they "structure[] the weekly pay stubs with several different company names in order to confuse taint overtime evidence on pay stubs." (AC at 8.) And in his opposition memorandum, Plaintiff alleges that his paycheck was short overtime. (P's Opp. at 2.) On the other hand, his Amended Complaint only references an FLSA claim for retaliation and not an underlying FLSA violation, (*see* AC at 5), and he also alleges that he asked for extra work such as driving transit or charter buses but that Miller, NBBC's Director of Operations, said that there was no overtime, (*id.* at 7). Based on these contradictory allegations, it is hard to construe whether Plaintiff is alleging an FLSA overtime claim because he worked overtime and was denied overtime pay, or that he was denied the opportunity to earn overtime pay at all.

      Construing Plaintiff's Amended Complaint "to raise the strongest arguments that [it] suggest[s]," *Shibeshi*, 475 F. App'x at 808, as I am required to do when construing a *pro se* pleading, I cannot see how Plaintiff has asserted FLSA violations. To the extent Plaintiff alleges he was not paid time-and-a-half for overtime that he worked, Plaintiff was required to "sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours," *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114

(2d Cir. 2013), which he did not do.  And to the extent Plaintiff alleges he was denied the

opportunity to even work overtime hours, Plaintiff's FLSA claim fails because "[a]n employee

who has not worked overtime has no claim under FLSA for hours worked below the 40-hour

overtime threshold, unless the average hourly wage falls below the federal minimum wage."  *Id.*

at 115.  There is no allegation that Plaintiff was paid less than the minimum wage or that he

worked more than 40 hours per week as a bus driver.[10]  In fact, Plaintiff alleges in his Amended

Complaint that he was paid $17.00 per hour, (AC at 7), which is in excess of the federal

minimum wage of $7.25 per hour.[11]  Therefore, to the extent Plaintiff's Amended Complaint

alleges any substantive FLSA violations, those claims are dismissed.  *See Nakahata v. New York-*

*Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013) (FLSA "requires payment

of minimum wages and overtime wages only," so it "is unavailing where wages do not fall below

the statutory minimum and hours do not rise above the overtime threshold.").

Plaintiff's FLSA retaliation claims are also insufficiently pleaded.  Under the FLSA's

anti-retaliation provision, "it [is] unlawful for any person . . . to discharge or in any other manner

discriminate against any employee because such employee has filed any complaint or instituted

or caused to be instituted any proceeding under or related to [the FLSA]."  29 U.S.C. § 215(a)(3).

To allege a retaliation claim under the FLSA, "a plaintiff must plead facts showing a *prima facie*

case of retaliation, namely:  (1) participation in protected activity known to the defendant[s]; (2)

an employment action disadvantaging the plaintiff; and (3) a causal connection between the

protected activity and the adverse employment action."  *Salazar v. Bowne Realty Assocs., L.L.C.*,

796 F. Supp. 2d 378, 384 (E.D.N.Y. 2011); *see Tongring v. Bronx Cmty. Coll. of City Univ. of*

---

[10] The earnings statements Plaintiff supplies show fewer than 40 hours per week.  (P's Opp. at 5, 45.)

[11] *Minimum Wage*, U.S. Department of Labor, https://www.dol.gov/general/topic/wages/minimumwage (last visited Nov. 19, 2018).

*N.Y. Sys.*, No. 12-CV-6854, 2014 WL 463616, at *4 (S.D.N.Y. Feb. 4, 2014).  While "[i]t is possible to state an anti-retaliation claim under the FLSA without proving an actual violation of the FLSA," *Marcotte v. City of Rochester*, 677 F. App'x 723, 726 (2d Cir. 2017) (summary order), a plaintiff must make "an assertion of rights protected by the statute" to establish that he engaged in a protected activity, *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011).

Plaintiff cannot establish that he engaged in protected activity under the FLSA through his written or oral complaints.  Plaintiff's written complaint to the NYSDHR was not protected activity under the FLSA because his complaint was based on discrimination, not an FLSA violation.  Although Plaintiff selected the boxes labeled, "[p]aid me a lower salary than other workers in my same title" and "[g]ave me different or worse job duties than other workers in my same title," among other boxes, (Reinharz Aff. Ex. 1 at 4), simply selecting those boxes within a discrimination complaint does not begin to raise a claim under the FLSA that the employer did not pay minimum wage or did not pay time-and-a-half for overtime.  *See, e.g.*, *Dunn v. Sederakis*, 143 F. Supp. 3d 102, 110 (S.D.N.Y. 2015) (written complaint with State Division of Human Rights alleging unlawful discrimination insufficient to raise FLSA complaint); *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 473 (S.D.N.Y. 2013) (general complaints about discrimination and harassment do not constitute FLSA protected activity).  In addition, Plaintiff's allegation that he orally "complained a lot about the pay stubs," (AC at 8), in various conversations with NBBC personnel also does not plausibly allege protected activity.  Such oral complaints only put NBBC on notice that Plaintiff believed he had not been paid what his employer had promised, but that is not enough to assert an FLSA violation.  They are not enough "for a reasonable employer to understand [them] . . . as an assertion of rights protected by the

statute and a call for their protection." *Kasten*, 563 U.S. at 14; *see Watkins v. First Student, Inc.*, No. 17-CV-1519, 2018 WL 1135480, at *10 (S.D.N.Y. Feb. 28, 2018) (approaching employer regarding discrepancy in pay or inability to reconcile pay stubs insufficient to put employer on notice that employee claimed FLSA violation); *Pierre v. Air Serv Sec.*, No. 14-CV-5915, 2016 WL 11396816, at *12 (E.D.N.Y. July 28, 2016) (complaints regarding checks being short do not suffice as invocation of rights under FLSA and thus are not protected activity), *report and recommendation adopted*, 2016 WL 5136256 (E.D.N.Y. Sept. 21, 2016); *Dunn*, 143 F. Supp. at 113 ("Opaque and unexplicated reference to 'overtime'" insufficient to put employer on notice that employee was complaining of FLSA violation, particularly because employee also complained about other pay matters). Thus, Plaintiff's oral complaints are not protected activity under the FLSA either.

But even if Plaintiff had engaged in protected activity under the FLSA, Plaintiff's FLSA retaliation allegations do not state a claim because Plaintiff cannot establish a causal connection between the protected activity and the adverse employment action. "[A] causal connection between an adverse action and a plaintiff's protected activity may be established through evidence of retaliatory animus directed against a plaintiff by the defendant or by showing that the protected activity was closely followed in time by the adverse action." *Mullins v. City of N.Y.*, 626 F.3d 47, 53 (2d Cir. 2010) (citations and internal quotation marks omitted). The Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship." *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001). "It is up to a court [to] exercise its judgment about the permissible inferences that can be drawn from temporal

proximity in the context of particular cases." *Salazar v. Bowne Realty Assocs., L.L.C.*, 796 F. Supp. 2d 378, 385 (E.D.N.Y. 2011).

For the same reasons Plaintiff's assertions of retaliation fall short of stating a retaliation claim under Title VII, Plaintiff's FLSA retaliation claim falls short of plausibility here too. Even if I assume Plaintiff's complaint about overtime pay on December 7, 2016, (P's Opp. at 2), or his NYDSHR complaint on January 25, 2017[12] were protected activities under the FLSA, even though no statute nor a denial of minimum wage or time-and-a-half was mentioned, it is again not plausible – despite temporal proximity – that retaliation was the reason for Defendants' decision to suspend Plaintiff in February 2017. Plaintiff has again relied upon the logical fallacy of *post hoc ergo propter hoc* – that because he was suspended after he engaged in protected activity, the protected activity must have been the cause of his suspension. But I decline to infer causation based on this flawed reasoning, especially when a more obvious and more plausible explanation for the suspension exists: the employer's obligation under DOT regulations after learning of the head injury. Because Plaintiff cannot establish a causal connection between an adverse action and his protected activity, Plaintiff's FLSA retaliation claim is dismissed.

## F. State Law Claims

In addition to Plaintiff's federal claims, he further alleges that his rights were violated under the NYSHRL and NYLL. (AC at 5.) The "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction where all federal-law claims are eliminated before trial. *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Having determined that the only claim over which this Court has original

---

[12] Plaintiff's NYSDHR complaint mentioned short checks. (Reinharz Aff. Ex. 1 at 5.)

jurisdiction should be dismissed, I decline to exercise supplemental jurisdiction over Plaintiffs'

remaining state law causes of action. *See id*. (citing 28 U.S.C. § 1367(c)(3)). Accordingly,

Plaintiff's causes of action under state law are dismissed.

## III.   <u>LEAVE TO AMEND</u>

Leave to amend a complaint should be freely given "when justice so requires." Fed. R.

Civ. P. 15(a)(2). It is "within the sound discretion of the district court to grant or deny leave to

amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "Leave to

amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory

motive on the part of the movant, repeated failure to cure deficiencies by amendments previously

allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility

of amendment, etc.'" *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman*

*v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended once, after having the benefit of a pre-motion letter from

Defendants outlining their proposed grounds for dismissal, (Doc. 9), and the discussion during

the February 21, 2018 conference, (*see* Minute Entry dated Feb. 21, 2018). Plaintiff's failure to

fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient

ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*,

898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his

complaint when he first amended, he clearly has no right to a second amendment even if the

proposed second amended complaint in fact cures the defects of the first. Simply put, a busy

district court need not allow itself to be imposed upon by the presentation of theories seriatim.")

(alteration, footnotes, and internal quotation marks omitted); *In re Eaton Vance Mut. Funds Fee*

*Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs

have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted).  Further, although Plaintiff has requested the opportunity to amend his Amended Complaint, (P's Opp. at 3), he has not suggested he is in possession of facts that would cure the deficiencies identified in this opinion.  Accordingly, leave to amend is denied.  *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 506 (2d Cir. 2014) (plaintiff need not be given leave to amend if it fails to specify how amendment would cure pleading deficiencies in complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec. LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (denial of leave to amend would be proper where "request gives no clue as to how the complaint's defects would be cured") (internal quotation marks omitted).

## IV.    REMAINING DEFENDANTS

Defendants Spangler, Mishk, and Solis have not appeared in this case.  But the Court dismisses the claims against these Defendants *sua sponte*.  A district court may dismiss an *in forma pauperis* complaint on its own motion where a plaintiff fails to state a claim upon which

relief can be granted.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii).[13]  The Amended Complaint makes

identical allegations against each Defendant.  Therefore, all claims against the remaining

Defendants are dismissed as well.

**V.     CONCLUSION**

Defendants' Motion to Dismiss is GRANTED.  The Clerk of Court is respectfully

directed to terminate the pending motion, (Doc. 25), send a copy of this Opinion and Order to

Plaintiff, and close the case.

**SO ORDERED.**

Dated:  November 19, 2018
        White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

---

[13] Generally, a *pro se* plaintiff should be allowed an opportunity to amend the complaint prior to dismissal for failure to state a claim, *see Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795-96 (2d Cir. 1999) (*per curiam*), but here Plaintiff has had that opportunity.